Um, the next case on our calendar for argument this morning is number 1943 20 United States v. Seeley. Ms. Kunstler. Thank you. Good morning. May it please the court, my name is Sarah Kunstler and I represent the appellant James Seeley. First off, no one is contesting that my client, the appellant, pled guilty to a repugnant offense. However, because the client invites feelings of moral repugnance, doesn't mean we can discard the deliberate application of the laws for all citizens. Here, James Seeley was sentenced to 262 months in prison, almost 22 years, based on an incorrect calculation of the guidelines. The sentence he receives at the low end of those incorrectly calculated guidelines. Had the guidelines been calculated correctly at 87 to 108 months, it would have been clear that he was, that he was sentenced to over three times the low end. But let me, before you get into the, um, the guidelines and so on, let me just ask, what is the status of the argument that the indictment was insufficient? The argument is responded to by, you know, the guilty plea, uh, eliminates the ability to challenge the indictment. And I didn't see an argument responding to that in your reply brief. That's when your client presses. Um, but could you address, I can address that your honor. Um, you know, even, even after, uh, a guilty plea, this court has the discretion to find that the indictment was insufficient and reverse Mr. Seeley's conviction, um, and remand the case back to the court. If it finds both plain error, um, and that the error affects the public reputation of judicial proceedings. Um, I, I believe, um, the APLEE cites a case UDIN, U D D I N, um, for this proposition. And, um, I, I, I submit that this error does that here. Mr. Seeley pled guilty to an indictment wholly lacking in factual particularity because it did not state which provision of New York state law his conduct was alleged to have violated. Um, instead by citing to the entirety of article one 30, the indictment was essentially silence silent as to which offense out of more than 20, he was being charged with committing ranging from forcible touching to rape. Um, and, and we maintain as we did in our opening brief, that the absence of the very core of criminality here affects the fairness, integrity, integrity of the proceeding. And Mr. Seeley's conviction must be reversed. I did not address that in my reply brief because my argument would have been essentially restating what I stated in my opening brief as to, as to that point. Um, but I do, I did want to take an opportunity to note UDIN, which the, uh, which the APLEE cited. So thank you. Thank you. Thank you for clarifying that. Um, um, so to return to my guidelines calculation argument, um, I w I want to look at, let's look at two G 1.3, um, which does not encompass intent crimes. And, you know, how do we know that, you know, first we know, according to two X 1.1, that attempt times are covered by two X 1.1 and it's expressly covered by another offense section, right here, two G 1.3, plainly does not expressly cover and attempted any attempt offense, much less an attempted violation of, of 18 USC 24, 22 B. Um, so that means that two X 1.1 applies if there's no other guidelines that expressly applies. But as, as I argued in my opening brief, we need not rely on two X 1.1 here because we have a provision to a 3.1 that expressly applies to attempt crimes and expressly applies to violations of two, four, two, two B. Um, so, you know, this is not, um, there's, this is not a stretch for your honors. It's a simple question for the court because the correct guidelines applied, um, in my brief, I make other arguments about two G one point other provisions of two G 1.3. I don't think your honors actually even need to reach those arguments, um, because, uh, the, there's no express provision. So your honors goes straight to the provision that does apply to a 3.1, um, with respect. Isn't there a link, isn't there two G 1.3 and section 24, 22? I mean, we've held that 24, 22 covers, um, uh, minors that include fictitious minors that you can be convicted of crime under 24, 22. And that leads us to two G 1.3. What's wrong in that inferential chain? Because my client was not just convicted of a fictitious minor who was convicted of a, an attempt crime. Um, and it's, really not the fictitious minor piece of this that your honors need to look at. It's that the guideline that the guidelines are very clear when dealing with attempt offenses. If the guideline does not, does not specifically apply to a attempt, um, it does, you know, it does not specifically mention attempts. Then you look at two X 1.1, or you look at another guideline that does, we know from two way 3.1, that it applies to two to two violations of this provision. You know, that is what the sentencing commission intended. Um, I hope that answers your honors question. Yeah, I, I, uh, I think so. I found this a little bit tangled. Okay. Um, yeah. Okay. Please go ahead. Um, in addition, we know that four B 1.5 doesn't apply, um, because of the, the word minor is, is, does not, is not a word that requires definition. Um, now this is an argument that, uh, you know, if you look at earlier versions of four B 1.5, you'll find that the sentencing commissions is actually using its application notes over a period of time to change the definition of minor in earlier versions of four B 1.5 minor is defined as a person under the age of 18, um, in later versions of four P 1.5. And that's later versions of one point. A minor is defined to include law enforcement officers and other fictitious minors, right? That that's not what the application notes are for. They're not supposed to be used to broaden the scope of a guideline. Um, so in any event, even if your honors were to find that four B 1.5 applies here, it is clear that two G 1.3 does not. And in situations where your honors apply to a 3.1 and four B 1.5, there would still be a significant decrease in the guidelines for my client. Um, and I just wanted to calculate that for your honors because did not do that in my brief. Um, in that situation, um, the offense level would be 29. Um, and then, uh, which is, uh, 32 for offenses with a max of 20 years or more minus three for acceptance of responsibility and a criminal history of six, which is required by four B 1.5. The guidelines range in that case would be 1 51 to 1 88, which is still significantly lower than the 2 62 to 3 27 guideline calculated by the district court. Significant difference. All right. Um, well, thank you. You're just about out of time, and you have two minutes for rebuttal. Thank you, Your Honor. All right, we'll hear from the government. Mr Dosanjh. Thank you, Your Honor. May it please the court. I'd like to focus on the guidelines calculations issues raised by the defendant. Um, the district court did not commit plain error by calculating defendant sentence under 2 G 1.3 rather than to a 3.1. It was not a clear or obvious mistake for the district court to do so, because Appendix A of the guidelines directs the court to use 2 G 1.3 and 2 G 1.3 states that it applies to violations of 18 U. S. C. 24 22 B statute under which the defendant. The defendant has cited no case requiring the court to use to a 3.1 for such convictions. The commentary to a 3.1 refers only to other statutes when identifying the relevant quote statutory provisions. And there's no cross reference to the statute under which Mr Sealy was convicted into a 3.1. The conditions just to just to be clear, though, you're in your roof. You take the position that there was no error, let alone plain error. But you're saying right now that, you know, there was plenty of reason to find it this way. But are you? Are you agreeing with Miss Consular that this was error? No, Your Honor, I'm not. I think, um, it's there is an open question, I think, in the court in the circuit. Um, when you have, uh, attempted enticement under 24 22 B, um, whether it should be calculated under 2 G 1.3 or 2 X 1.1. But as we argue in our brief, and this is this is an issue that really kind of developed, I think, further in the reply brief. Um, it wouldn't make a difference, even if you were to find error here, or potential error. I don't think the court needs to decide the matter because there would there would be no difference in the sentence under 2 X 1.1. I would refer the court to several cases which are not cited in our brief, but deal with this, this this kind of issue. United States versus show Ronski 968 F. Second 242. The second case is United States versus a motto, which is 46 F. 3rd 1255. And with the court's permission, I would cite to two unpublished decisions before 2007, both of which recognize that the issue is not settled in the circuit. You know, I'm going to interrupt for a minute here, because if these are not cited in your brief, this counselor hasn't had a chance to respond and comment on them. Your Honor, I think the issue again, it was, I think it became more of an issue in the reply brief. And she cited a case from the Ninth Circuit that then will would bring that also cites Sharansky in a motto. And then it has to deal with it deals with a different slightly different issue about conspiracy under the Hobbes Act, and whether the guideline for for robbery applies expressly. But you're basically what you're saying, though, this is an open issue. It's an open issue. It can't be plain error. Right. And the government says, thinks that there's no error here because of the guidance provided by the guideline itself. And the idea that 2A.3.1 would be the appropriate guideline that has no support in the record, or sorry, in the guidelines. While 2G.1.3 cites 2A.3.1, it says you are only to apply that if the conduct described in 2241 or 2242 is involved in the offense, which is not here. And application of 2A.3.1 would result in a higher offense level, which it would not. The conduct under 2241c, that governs attempted sexual acts with a child under 12, but it requires the perpetrator to have traveled across state lines or otherwise committed the acts within the jurisdiction within federal jurisdiction. Seeley was convicted of a different crime. He was convicted of attempted persuasion of a minor to commit a criminal sexual act. The statutory offense here is focused on the effort to persuade, not on the completion of the sexual act or the attempted completion of the sexual act. That's very clear from this court's jurisprudence. Also, as defense counsel shows in their brief, 2A.3.1 would not result in a higher offense level. And because, again, there's no plein air here, I think also because there's no harm to Mr. Seeley's substantial rights, if you were to apply 2X.1.1, which is the attempt, general attempt guideline, he would not get the benefit of the three-level reduction for attempts, because the provision under 2X.1.1 says that you only apply that three-level reduction, or you apply that three-level reduction unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense, or the circumstances demonstrate that the defendant was about to complete all such acts, but for apprehension or interruption by some similar event. And here, Mr. Seeley believed he had completed all the acts necessary for violation of the substantive offense. He had secured the consent of the alleged or the fictitious minor's father. He had spoken with the minor directly and told her that we are going to have sex tomorrow. That's in PSR paragraphs 18 and 19. And there's another case, which we cite in our brief, called United States v. Monsivais from the Fifth Circuit. It's 737F Appendix 668, which rejects the three-point reduction under 2X.1.1B1 in very similar circumstances. The background commentary to 2X.1.1 also suggests that the three-level reduction would not apply unless the defendant was apprehended, quote, well before the defendant completed the acts necessary for the substantive offense. And this court has been very clear that under the Enticement and Persuasion Statute 2422B, Congress has made a clear choice to criminalize persuasion and the offense. So, at the very least, there was no plain error. The government believes there's no error in the application of 2G1.3, but certainly no plain error. As far as the B-5 enhancement, this court need not wade into the matter of what deference to afford the commission's commentary because it's clear from the context and purpose of the guideline itself that the term minor is not limited to real minors. Kaiser, upon which the defendant relies, makes clear that the issue of whether to give our deference to an agency's interpretation of its rules only applies after the court has exhausted all traditional tools of statutory construction, which look to the text, the structure, the history, and the purpose of the provision being interpreted. It is important to emphasize that to invalidate the commentary, the defendant here has to show not only that minor means a person actually under 18, but the term minor unambiguously excludes individuals who are represented to be under 18, and that's what Mr. Seelig cannot show. He has to show that the term minor cannot include fictitious minors given the text, history, and context and purpose of the guidelines, but as the government argues in its brief, those factors weigh in support of finding that the term minor encompasses fictitious minors without even resorting to the commentary. The enhancement applies where the offense, quote, the offense involved, and the term offense includes attempts under 2422B, and this court has recognized that it's clear from the language of the statute that minors include fictitious minors, and that's Gagliardi 506 F3rd at 145 to 147. It's collecting cases from around the country. So by using offense, the guideline necessarily encompassed attempts involving fictitious minors. Now, this is a different question from the 2X1.1 question. We're talking about whether in a reading of the guideline using the traditional tools of statutory reconstruction, you can reasonably interpret minor to include fictitious minors. 2X1.1 refers to express the idea of whether there was an express reference, and that's a much stricter standard. So those two issues have to be kept separate, and here the issue of Kaiser deference just never arises because it's a reasonable interpretation of minor to include fictitious minors. Let me just make sure I understand. Your opponent says 2X1.1 says attempt crimes are generally covered by the default guidelines provision unless expressly covered, as you were just saying, unless expressly covered by another offense guideline section, and the list of offense guidelines expressly covering attempts doesn't include 2G1.3. How do you get past that? Your honor, it doesn't include it, but I don't think it also excludes it, and I'm not sure if you can look at that list and say it's an exhaustive list, but even if you were to find that there's a potential error here, I don't want to oversell our position here. It's an open question, and I still think you can't get around plain error, and you can't show harm to Mr. Seeley's substantive rights. So I think, your honor, I'm not saying that it's an unsubstantial argument they're making. It's just that in terms of whether 2X applies and whether 2G applies, it's an open question, so it can't be plain error. To correctly apply the guidelines, the district court was also required to consider and follow the sentencing commission's guidance, and Stinson, the Supreme Court, made that very clear, and it looked to another guideline, which specifies that failure to follow commentary interpreting a guideline could constitute an incorrect application of the guidelines. The commentary to 2G 1.3 and to the 4B enhancement makes it elusively clear that it involves minors who are represented to be, or individuals who are representing themselves to be minors or represented by law enforcement to be minors. All right. Thank you. I think we have your argument. We have your papers. We'll hear from Ms. Kunstler. You have two minutes of rebuttal. Thank you, your honors. You know, this is not an open question. I mean, this is a plain textual reading of these three guidelines, 2G 1.3, 2A 3.1, and 2X 1.1. It is entirely possible that courts are not applying this incorrectly because it's clear from the text. I want to, you know, highlight that 2A 3.1 does mention the statute that my client is convicted of, 2422, 2242. In its commentary, it says statutory provisions 18 U.S.C. 2241 and 2242. Why bother mentioning it all if there's no circumstance in which it would apply to this statute, right? There's no reason to list that statute in 2A 3.1 if it never applies to it. And I submit, this is clearly the situation that applies to it. So, but you are on plain error review, and there's ambiguity in these complex guidelines and their interaction. Why is it plain error? You know, I'm saying that the appellee may be reading ambiguity into this, but I don't think there's ambiguity here. 2X 1.1 says what it says. It says explicit attempts, right? So, you know, I read them the way anyone else should read them. It's not explicitly in 2G 1.3. Therefore, 2G 1.3 doesn't apply. I searched the way anyone could search for another guideline that does apply, and I found it. It took me all of 10 minutes to do this, right? This is the kind of textual reading that's required of us. Just because people aren't reading language in the way that it means and aren't applying it in the way that it means doesn't mean it's unambiguous. It means that they're not reading it correctly, and I submit that that's happening here in sex offense cases because there's a tendency to want to apply the higher guideline in these cases. That's what's muddling this. It's not unambiguous. We'll reserve decision. Thank you. That concludes our calendared oral arguments this morning, and the clerk will please adjourn court. Thank you, Debbie. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.